UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
MARCO RAFALA

          Plaintiff,

  v.

NELSON, WATSON & ASSOCIATES, LLC

          Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

       **10-cv-00173**

       **MEMORANDUM OF LAW**

       **JUDGE DEARIE**
       **MAGISTRATE GO**


**DEFENDANT'S SUPPLEMENTAL BRIEF
IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
PURSUANT TO FED. R. CIV. P. 56(a)**


HILARY KORMAN, ESQ.
MEL S. HARRIS & ASSOCIATES, LLC
5 Hanover Square – 8th Floor
New York, New York 10004
212-660-4900 Ext.3309

## TABLE OF CONTENTS

| SECTION | PAGE |
|---|---|
| Introduction & relevant procedural background ……….……………….…… | 1 |
| Point I: Cases related to the TCPA debt collection exemption ………… | 1 |
| Point II: Cases related to plaintiff's lack of standing ……………..…… | 3 |
| Point III: Dialer cases ……………………………….…………….…….… | 6 |
| New Evidence Improperly Annexed to Plaintiff's Reply…………................. | 8 |
| Conclusion ……………………………………………………………….… | 10 |

## Table Of Authorities

| | PAGE |
|---|---|
| *Meadows v. Franklin Collection Service, Inc.,* 414 Fed.Appx. 230 (11th Cir. 2011) ……………………………………………………………… | 1, 2, 3 |
| *Santino v. NCO Financial Systems, Inc.,* 2011 WL 754874 (W.D.N.Y.)………………………………………………………………….. | 2, 3 |
| *Watson v. NCO Group, Inc.,* 462 F.Supp.2d 641 (E.D.Pa. 2006) ……………. | 2 |
| *Spencer v. Arizona Premium Finance Co.,* Slip Copy, 2011 WL 4473178, Case No. 06-cv-160S (W.D.N.Y.) ……………………….. | 2, 3 |
| *Bentley v. Bank of America, N.A.*, 773 F.Supp.2d 1367 (S.D.Fla.2011) ……………………………………………………………… | 2 |
| *Stuart v. AR Resources Inc.,* Slip Copy 2011 WL 904167, Case No. 10-350 (E.D.Pa.) …………………………………………………… | 2, 3 |
| *Sanchez v. Continental Service Group,* No. D-0202-CV-2009-13437 (2d. Jud. Dist. NM. 2010) ……………………………………………………… | 3 |
| *Leyse v. Bank of America National Ass'n,* 2010 WL 2382400, Case No. 09-civ-7654(JGK)(S.D.N.Y.) …………………………………….. | 3, 4 |
| *Gutierrez v. Barclays Group,* Slip Copy, 2011 WL 579238, Case No. 10-cv-1012-DMS-BGS(S.D.Cal.), ………………………………… | 3, 4, |
| *D.G. ex rel. Tang v. William W. Siegel & Associates, Attorneys at Law, LLC.,* 791 F.Supp.2d 622 (N.D.Ill.2011). ………………… | 4, 5 |
| *Soppet v. Enhanced Recovery Co.,* Case No. 10-c-5469, 2011 WL 3704681(N.D.Ill.) …………………………………………….. | 4 |

*D.G. v. Diversified Adjustment Serv., Inc.,* Case No. 11-c-2062,
Slip Copy, 2011 WL 5506078 (N.D.Ill.) …………………………………….. 5

*Kane v. Nat'l Action Fin. Services, Inc.,* 11-cv-11505, 2011
WL 6018403 ……………………………………………………………… 5

*Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946
(9th Cir. 2009). …………………………………………………………… 6, 7

*Griffith v. Consumer Portfolio Serv., Inc.,* Case No. 10-c-2697,
2011 WL 3609012 at * 1 (N.D.Ill) ……………………………………....... 6, 7

*Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837,
104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) …………………………………… 6

*Pollock v. Island Arbitration & Mediation, Inc*
22 Misc.3d 463, 869 N.Y.S.2d 740 (City Ct. Nassau Co. 2008)…….………. 7, 8

*Moore v. Firstsource Advantage, LLC,* Slip Copy, 2011
WL 4345703(W.D.N.Y.) …………………………………………………. 8

*Tolliver v. McCants*, No. 05 Civ. 10840, 2009 WL 1473445, at *3
(S.D.N.Y.); *Aurora Loan Services*, 513 F.Supp.2d at 20 (S.D.N.Y. 2007)... 8, 9

*Seneca Insurance Co. v. Wilcock*, No. 01 Civ. 7620, 2005 WL
2898460, at *8 (S.D.N.Y.) ……………………………………………….. 9

*Pugliese v. Professional Recovery Service,* 2010
WL 2632562 *7 (E.D.Mich. 2010)…………………………………………... 9

*Tradax Energy, Inc. v. Cedar Petrochemicals, Inc*., 317
F.Supp.2d 373 (S.D.N.Y. 2004) ……………………………………………. 9

*Retirement Plan of UNITE HERE Nat. Retirement Fund v. Kombassan*,
629 F.3d 282 (2d Cir. 2010)……………...…………………………. 10

*Potamkin Cadillac Corp. v. B.R.I. Coverage Corp*., 38 F.3d 627,
632–33 (2d Cir.1994)…………………………………………...……….. 10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
MARCO RAFALA

                                                                                  **10-cv-00173**

                                      Plaintiff,

                                                           **SUPPLEMENTAL**
                                                     **MEMORANDUM OF LAW**

     v.

                                                        **JUDGE DEARIE**
NELSON, WATSON & ASSOCIATES, LLC          **MAGISTRATE GO**

                                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## INTRODUCTION & RELEVANT PROCEDURAL BACKGROUND

Plaintiff's partial motion for summary judgment on his Telephone Consumer Protection Act ("TCPA") claim was fully briefed and submitted as of January 21, 2011. A conference regarding the motion was held before Judge Dearie by telephone on May 24, 2011. Since the close of briefing, the parties have submitted various supplemental authorities in support of their positions (*see Docket #s* 50-55, 58-62). As a result, on March 30, 2012, Judge Dearie ordered each side to submit supplemental briefs on or before April 16, 2012. As such, Defendant Nelson, Watson & Associates, LLC. ("Nelson Watson") respectfully submits this Supplemental Memorandum of Law in further opposition to Plaintiff's motion.

## DISCUSSION OF POST-BRIEFING CASES

    **i.    CASES RELATED TO THE TCPA DEBT COLLECTION EXEMPTION**

The common theme throughout plaintiff's briefing has been to insist that certain legal conclusions be reached without any supporting evidence. Since briefing has closed, plaintiff has continued his campaign of further insisting that the Court take additional conclusory leaps by way of filing virtually any case that has been handed down throughout the country, *except* the second circuit, that so much as utters the word "TCPA."

To that end, the flood gates were opened on February 14, 2011 when defendant filed a notification with the Court advising of an 11th Circuit opinion that affirmed the District Court's TCPA decision in the case of *Meadows v. Franklin Collection Service, Inc.,* 414 Fed.Appx. 230 (11th Cir. 2011). The case was filed by defendant because it was relied upon in its memorandum of law in opposition to plaintiff's partial

motion for summary judgment. In *Meadows,* the plaintiff received collection calls to her landline intended for her daughter, who lived with her on and off, and for a third party that was previously assigned the subject telephone number. *Id.* at 232. The 11th Circuit affirmed the lower court's determination that there was no violation of 47 U.S.C. § 227(b)(1)(B) as a result of the debt collection exemption and further stated "[a]s the district court noted, the FCC has determined that *all debt-collection circumstances are excluded from the TCPA's coverage*, an thus the exemptions apply when a debt collector contacts a non-debtor in an effort to collect a debt." *Id.* at 235 (emphasis added).

The Western District of New York followed suit in *Santino v. NCO Financial Systems, Inc.,* 2011 WL 754874 (W.D.N.Y.)(filed by defendant as Docket # 54). In *Santino*, the Western District declined to follow plaintiff's cited *Watson v. NCO Group, Inc.,* 462 F.Supp.2d 641 (E.D.Pa. 2006), noted that a variety of courts, including *Meadows,* also rejected *Watson*, and again found that the debt collection exemption *broadly applies,* whether privacy is implicated or not, and even regarding calls to non-debtors. *Id. See also Spencer v. Arizona Premium Finance Co.,* Slip Copy, 2011 WL 4473178, Case No. 06-cv-160S (W.D.N.Y.):

> Moreover, the purpose of the Telephone Act is to restrain telemarketers, not creditors, from making unsolicited, automated calls. As the background of the Senate Report indicates, "The use of automated equipment to engage in *telemarketing* is generating an increasing number of consumer complaints." S.Rep. No. 102-178, at 1 (1991) reprinted in 1991 U.S.C.C.A.N.1968, 1968 (emphasis added). With this in mind, it becomes evident that the exceptions carved out by the FCC are intended to prevent the statute from casting too wide a net. Thus, to hold Arizona liable under the Telephone Act would strip away these protections and contravene its purpose.

By way of Docket #55, plaintiff felt compelled to bring *Bentley v. Bank of America, N.A.*, 773 F.Supp.2d 1367 (S.D.Fla.2011), to the Court's attention which apparently supports the proposition that the established business relationship exception of 227(b)(1)(B) does not also apply to 227(b)(1)(a). Not only does plaintiff fail to mention that the TCPA claim was still dismissed in *Bentley,* but he seems to overlook the fact that defendant is not disputing that reading of the TCPA (*see* Defendant's Memorandum in Opposition to Plaintiff's Partial Motion for Summary Judgment, Point IX).

In addition, in yet another unpublished decision from a foreign jurisdiction filed by plaintiff (Docket # 53), *Stuart v. AR Resources Inc.,* Slip Copy 2011 WL 904167, Case No. 10-350 (E.D.Pa.), the

court narrowly discussed the debt collection exemption as it applies to landline calls under 227(b)(1)(B). However, the narrow application of the exemption by the *Stuart* court is in stark contrast to how it was discussed in *Meadows, Santino, Spencer,* and *Sanchez v. Continental Service Group,* No. D-0202-CV-2009-13437 (2d. Jud. Dist. NM. 2010)(*see* Pg.27 of defendant's opposition brief). Id. at 5. Nonetheless, despite acknowledging that the FCC and Congress's reason for delineating fewer exceptions under the "cellular phone provision" of 227(b)(1)(a)(iii) was due to heightened cost concerns[1] of incoming calls to cellular telephone numbers, the *Stuart* court did not have facts before them, as here, where the plaintiff did not pay a dime in excess of his typical monthly phone plan as a result of the calls.[2]

Defendant contends that the practical application of the telemarketing statute, the broad debt collection exemption, the plain reading of the TCPA related to now obsolete cost shifting concerns, and inexplicable delineation of exceptions for landline calls, makes it clear that plaintiff's TCPA claim cannot survive. This is especially so where the plaintiff has admitted that, if he did indeed receive a call to an alleged cell phone, he incurred no additional charges than he would have had the calls been to a landline.

    **ii.**    **CASES RELATED TO PLAINTIFF'S LACK OF STANDING**

Following the filing of the *Meadows* decision by defendant, plaintiff proceeded to file any TCPA case issued from anywhere in the country, all outside of the second circuit, that went against the second circuit decision of *Leyse v. Bank of America National Ass'n,* 2010 WL 2382400, Case No. 09-civ-7654(JGK)(S.D.N.Y.)(cited on Pg. 19 of defendant's opposition, which held that a "called party" under the TCPA is the *intended recipient* of the call and who has standing to assert a TCPA claim[3]), in hopes that this Court would abandon the trend within its own circuit in favor of foreign jurisdictions. To that end, plaintiff first filed *Gutierrez v. Barclays Group,* Slip Copy, 2011 WL 579238, Case No. 10-cv-1012-DMS-BGS(S.D.Cal.), which disagreed with *Leyse* and held that the telephone "subscriber" has standing to sue for

---

[1] "The FCC also reiterated the lack of other exceptions to section 227(b)(1) (A)(iii), recognizing that prerecorded calls could be particularly costly to cellular subscribers who pay for incoming calls." (citations omitted).

[2] This fact, on top of the fact that the telephone number at issue is allegedly the only telephone number that plaintiff claims to own (Rafala Dep. at 22, lines 20-23).

[3] *Leyse* at * 5: "Bank of America did not call Leyse [the co-plaintiff that answered the call at issue]; therefore, Bank of America was not required to seek Leyse's permission to place the call."

TCPA violations. However, *Gutierrez* is distinguishable for a variety of reasons; 1) the parties disputed whether plaintiff was the intended recipient of the call or not (*Id.* at *4) and 2) without any kind of statutory analysis, reference to the unique and inconsistent structure of the TCPA, or other persuasive authority, the *Gutierrez* court blindly chose not to follow any of the contrary cases. Here, unlike Gutierrez, none of the parties dispute that the defendant was seeking debtor "TJ" (*see* Korman Declaration, Exhibit A [Amended Complaint], ¶ 12 ["These repeated calls were in connection with the collection of a debt allegedly belonging to someone else, T_J_."]; CSOF ¶¶ 11-13).

The same goes for plaintiff's filed *D.G. ex rel. Tang v. William W. Siegel & Associates, Attorneys at Law, LLC.,* 791 F.Supp.2d 622 (N.D.Ill.2011), which also declined to follow *Leyse* and the related standing cases based on *third circuit guidelines* regarding statutory interpretation (*see Id.* at 625-25, as opposed to *Leyse's* deference to second circuit guidelines). Also, in distinguishing *Leyse,* the *Tang* court stated "Leyse is distinguishable because Siegel did not call a number actually associated with Kimberly Nelson, the individual it was attempting to contact, but instead called Plaintiffs cellular number[4]." *Id.* at 625. However, in the instant case, the number at issue *was* associated with TJ by way of receipt by defendant of the number from its client, who may have received explicit consent by TJ to contact her at said number, and then confirmation by defendant of the accuracy of the number through TJ's credit reports (*see* CSOF ¶ 11). Finally, plaintiff fails to mention that Illinois is one of the most TCPA and consumer friendly jurisdictions in the entire country.

Not surprisingly, various other Illinois courts, in following *Teng* and 7th or 3rd Circuit statutory interpretation, issued similar decisions, which plaintiff also made a point of filing: *Soppet v. Enhanced Recovery Co.,* Case No. 10-c-5469, 2011 WL 3704681(N.D.Ill.)(where, despite acknowledging the facial inconsistency of the TCPA, and after stating that "Section 227 contains no express definition of the term "called party." Section 227(b)(1) uses the term "recipient" in referring to statutory coverage of calls made from outside the United States to persons within the United States. One might infer from this that the term "called party," used later in section 227(b)(1), means something other than 'recipient.," the court comes to

---

[4] There is no reference to how exactly defendant obtained the Kimberly Nelson telephone number.

the opposite conclusion) and *D.G. v. Diversified Adjustment Serv., Inc.,* Case No. 11-c-2062, Slip Copy, 2011 WL 5506078 (N.D.Ill.). Plaintiff also furnished a similar case out of Michigan that followed the Illinois line of cases, *Kane v. Nat'l Action Fin. Services, Inc.,* 11-cv-11505, 2011 WL 6018403. In *Kane,* the plaintiff had received several hundred collection calls over the course of *four years* from the defendant to his cellular telephone, and, due to the technological set up of the calls, he was unable to connect with a live person to advise that the caller had the wrong number. *Id.* at * 1. Like *Tang,* there is no reference to how defendant obtained the alleged phone number for plaintiff. Again, using *third circuit* precedent and relying on the Illinois string of decisions, its neighboring circuit, the *Kane* court focused on the "any person" designation within the private right of action provision (§ 227(b)(3)). *Id.* at * 6.

However, *Kane's* broad interpretation of 227(b)(3), that "any person" can sue for a TCPA violation, could potentially include *witnesses* to a call, rather than a person that the call was actually directed to, as was the concern in *Cellco Partnership* (see footnote 5, below). Also, the court's rationale that

> Here, however, unlike in Leyse and Kopff[5], Mr. Kane was not an incidental recipient of a call properly directed to someone else. NAFS, although it intended to reach Ms. Bartlett, also intended to, and did, call Mr. Kane's personal cell phone number.

(*Id.* at * 7) is inherently flawed; certainly, you can't intend on reaching one person and at the same time also intend on reaching another. Nonetheless, it seems that, based on the volume and level of intrusion of the calls to Kane, coupled with the fact that the plaintiff was helpless in putting a stop to the calls, unlike here, it seems the court felt compelled to provide plaintiff with some kind of relief.

In sum, if standing to bring a TCPA suit is not limited to the intended recipient of a call, as the statute implies, then a business that attempts to comply with the statute by getting the prior express consent of the party it intends to call will nonetheless be subject to liability if an unintended recipient happens to answer the phone. This is especially disconcerting where the conduct at issue is not even related to telemarketing, which is what the TCPA is all about in the first place. Furthermore, the line of 6th and 7th Circuit cases that the plaintiff insists the Court consider, *over its own circuit* and neighboring jurisdictions,

---

[5] *Kopff v. World Research Group,* 568 F.Supp.2d 39, 42 (D.D.C. 2008), briefed by defendant on Pg. 20 of its opposition.

do not adequately reconcile the intentional inclusion of the consent exception.[6] Clearly, although standing was not adequately defined in the private cause of action clause of 47 U.S.C. § 227(b)(3), the generality was clarified by way of the exception.

### iii. DIALER CASES

As discussed in defendant's memorandum of law Point VII, one of the first cases to apply the definition of an automatic telephone dialing system pursuant to 27 U.S.C. § 227(a)(1) ("ATDS") was *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009). According to *Satterfield,* the statutory definition of an ATDS controls as it is clear and unambiguous, i.e., "equipment which has the *capacity* to (A) store or produce numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. at 950.

Contrarily, in yet another unpublished *Illinois* decision filed by plaintiff, *Griffith v. Consumer Portfolio Serv., Inc.,* Case No. 10-c-2697, 2011 WL 3609012 at * 1 (N.D.Ill), rather than standing by the clear language of the statute, the court rejected *Satterfield* altogether[7] and applied the very limited 2008 FCC Ruling regarding the FCC's *interpretation* of what the FCC believed Congress meant by the definition of an ATDS.[8] To that end, the FCC's conclusion was that an ATDS is one that operates without human intervention. Id. at * 3.

However, due to the fact that there is <u>no mention</u> of "human intervention" in 27 U.S.C. § 227(a)(1), it seems the FCC attempted to rewrite the definition of ATDS. Given that, in following *Satterfield,* the FCC's Ruling should be barred and disregarded because the statutory definition is clear and unambiguous on its face. See *Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)(Holding if Congress has directly spoken to the precise question at issue, "Congress's

---

[6] *See* Pg. 20 of Defendant's opposition brief: *Cellco Partnership v. Dealers Warranty, LLC., et al.,* 2010 WL 3946713 (D.N.J.): "By its terms, §227(b)(1)(A)(iii) provides an exception for calls made for emergency purposes or made with the prior express consent of the called party. Accordingly, the only logical reading of §227(b)(1)(A)(iii) is one that would require the party asserting the claim to be the *party to whom the call is directed.* Any other reading would render the exception for calls "made with the prior express consent of the called party" a nullity.

[7] Curiously, plaintiff relies on both cases in support of his position.

[8] All the while referring to "telemarketing" throughout.

intent must be enforced and that is the end of the matter. The Court as well as the agency [FCC] must give effect to the unambiguously expressed intent of Congress." 467 U.S. at 842-43).

Even applying the "human intervention" standard, however, defendant's dialer does not qualify. The Touchstar dialer at issue cannot initiate any calls until it is manually programmed by the dialer manager to call human-selected numbers (*see* CSOF ¶ 1). Further, the facts at issue in *Griffith* are dissimilar; in *Griffith,* almost the entire dialing process was computer assisted, even to the point of *choosing* which consumers to contact, unlike here (*Id.*). Moreover, the dialer at issue was manufactured by a company called Castel, Inc. which cannot be summarily equated with the "Touchstar" dialer in this case. Finally, despite the clear language of the statute that an ATDS must *also* have the capacity to store or produce numbers to be called using a <u>random or sequential number generator</u>, the *Griffith* court boldly stated that, <u>even if</u> the Castel dialer was unable to perform those functions, that it somehow *still* constituted an ATDS under the statute[9]. 2011 WL 3609012 at * 3. Based on the decision, it seems the Court had already made up its mind and relied on the convenient portions of the 2008 FCC Report to get to that result.

By contrast, a New York court *followed* the lower court's decision in *Satterfield* (2007 WL 1839807, 2007 US Dist LEXIS 46325 (N.D.Cal. 2007)(filed by defendant as Document #62) and came to the opposite conclusion of *Griffith*. In *Pollock v. Island Arbitration & Mediation, Inc.*, like the instant facts, the alleged cellular telephone number at issue was previously associated with the individual the defendant was looking to contact. 22 Misc.3d 463, 869 N.Y.S.2d 740 (City Ct. Nassau Co. 2008) at 464. In applying its interpretation of the definition of an ATDS to the case, the court opined:

> [T]he defendant's use of a call list of its clients' telephone numbers in order to generate the list of telephone numbers to which it intended to send facsimile transmissions is not demonstrative of the use of an automatic telephone dialing system. In fact, the use of a client call list suggests that the numbers the defendant called were in fact a specifically targeted group of numbers culled from its clients which were in no way randomly or sequentially generated (see Satterfield v Simon & Schuster, 2007 WL 1839807, 2007 US Dist LEXIS 46325 [ND Cal, June 26, 2007] [equipment used to send text messages to list of cellular telephone providers who specifically opted to receive promotions is not automatic telephone dialing system]; cf. Joffe v Acacia Mtge. Corp., supra [the use of computer to randomly or sequentially produce telephone numbers to be contacted via text message constituted automatic telephone dialing system]). Since the plaintiff did not establish that the defendant used a dialing system

---

[9] "Even assuming that CPS's equipment can only function in this way, and cannot generate and dial random or sequential numbers (cf. supra n. 1), it is still an "automatic telephone dialing system."

-7-

> which randomly or sequentially generated telephone numbers, the plaintiff cannot establish that the defendant placed a call to a cellular telephone using an automatic telephone dialing system pursuant to 47 USC § 227 (b) (1) (A) (iii).

*Id.* at 469. Similarly, in this case, the only numbers the defendant's dialer calls are those that the dialer manager specifically instructs it to via the imported list of account files, like *Pollack*; not a single number is randomly or sequentially generated, the system does not have such a capacity, and is thus without the potential ability to tie up emergency telephone lines (CSOF ¶1), as was the overarching legislative concern. In addition, it cannot store or produce numbers to be called. *Id.* Additionally, plaintiff has wholly failed to introduce any contrary evidence. *Id. See also, Moore v. Firstsource Advantage, LLC,* Slip Copy, 2011 WL 4345703(W.D.N.Y.)(genuine issue of material fact as to whether the dialer at issue was an ATDS under the TCPA). Simply put, the plain language of the statute must be honored and plaintiff has failed to establish that defendant's dialer qualifies as an ATDS in this case.

### **NEW EVIDENCE IMPROPERLY ANNEXED TO PLAINTIFF'S REPLY**

While defendant is not going to use this opportunity to improperly "sur-reply" to plaintiff's reply, which is replete with inaccuracies related to Mr. Kuzmitski's supporting affidavit and documents submitted in further opposition to the summary judgment motion[10], as the undersigned mentioned at the conference before the Court on May 24, 2011, defendant wants to reiterate that, incredibly, plaintiff first attaches an affidavit from the plaintiff and additional alleged evidence in support of his claim in the reply (*see* Document # 48, Exhibit H of Kurz Declaration) as a last-ditch attempt to overcome the obvious defects in this case. As a preliminary matter, it is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden. *see Tolliver v. McCants*, No. 05 Civ. 10840, 2009 WL 1473445, at *3 (S.D.N.Y.);

---

[10] Plaintiff's attempt to create a red herring by falsely accusing defendant of violating a court order is painfully transparent; the *letter* that plaintiff complains was withheld was clearly dated 12/14/10, received by defendant only after plaintiff had already filed his motion for partial summary judgment (*see* Kuzmitski Affidavit Exhibit G). In addition, the letter certainly is not a "manual" or some kind of document that reflects the interaction between defendant's phone system and dialer, despite the plaintiff's claims (see Pg.17-20 of plaintiff's reply brief). Further, Richard Cote gave no testimony (*Id.* at 20), there was no documentation annexed relating to "AdvantEdge collection software (*Id.*), and, although defendant is not required to disclose an affidavit created for the purpose of opposing a motion, Mr. Kuzmitski's affidavit was not prepared until the opposition was filed anyway. Also, as plaintiff does not even point to the specific discovery request allegedly violated, it seems plaintiff has impliedly admitted that he did not ask certain relevant and/or pointed questions over the course of discovery and is now surprised by certain unexplored facts. Finally, defendant supplied information about the mechanics of the dialer in its supplemental interrogatory response No. 12, which plaintiff conveniently omitted from his motion papers.

*Aurora Loan Services*, 513 F.Supp.2d at 20[11] (S.D.N.Y. 2007); *Seneca Insurance Co. v. Wilcock*, No. 01 Civ. 7620, 2005 WL 2898460, at *8 (S.D.N.Y.).

Here, it seems that plaintiff intentionally omitted the alleged cellular telephone bills, despite the fact that they were in his possession well before the filing of the motion (received by defendant on or around August 2010[12]) either because he was not aware of his burden to prove that the number at issue was a cellular telephone pursuant to *Pugliese v. Professional Recovery Service,* 2010 WL 2632562 *7 (E.D.Mich. 2010)[13], because he was attempting to withhold damaging evidence from the Court[14], and/or he was trying to avoid having to authenticate the records since he knew he would not be able to, as described below.

Further, the alleged Verizon cellular telephone bills are hearsay and inadmissible since they are not authenticated by way of a declaration from Verizon's Custodian of records. "[A]t the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records." *Tradax Energy, Inc. v. Cedar Petrochemicals, Inc*., 317 F.Supp.2d 373 (S.D.N.Y. 2004)(quoting *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir.2000)).  Also, "[t]o establish a proper foundation for a document offered into evidence as a business record, the custodian or other qualified witness must testify that 'the document was kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the record.'" *Retirement Plan of UNITE HERE Nat. Retirement Fund v.*

---

[11] "To allow plaintiff to then submit new materials to meet its burden would inappropriately allow plaintiff a second bite at the summary judgment apple. Nor does this court agree that allowing defendant an additional sur-reply cures any error because it again allows plaintiff an additional chance to meet its burden on summary judgment, and also creates opportunities for gamesmanship in motion practice. In short, plaintiff had the initial burden in moving for summary judgment, and may not add new materials simply because defendant pointed out that it has not met its burden."

[12] Despite the newly included Dennis Kurz Declaration in the reply (Document No. 48, ¶¶ 27 & 29), the referenced documents (and e-mails) produced or referenced from October 2010 were alleged telephone records regarding plaintiff's alleged previous landline related to telephone number 718-499-0083, which is not the telephone number at issue.

[13] *see* Pg. 17 of defendant's opposition brief: To prevail on a TCPA claim, a plaintiff must establish: (1) *a call was placed to a cell or wireless phone*,  (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior consent of the recipient.

[14] The alleged cellular telephone records during the time period at issue (although only partially produced with the reply) demonstrate that, despite plaintiff's claims, he was receiving calls from a variety of other collection agencies at or around the time period at issue (see CSOF ¶12) and that there were not as many contact attempts as plaintiff claims.

*Kombassan*, 629 F.3d 282 (2d Cir. 2010)(citations omitted).  "In all cases, the principal precondition to admission of documents as business records pursuant to Fed.R.Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp*., 38 F.3d 627, 632–33 (2d Cir.1994) (internal quotations and citations omitted).

Despite plaintiff's current claims within his delinquent supporting affidavit (*see* Document # 48, Exhibit H of Kurz Declaration) of personal knowledge and the ability to certify the cellular telephone records at issue, plaintiff previously *admitted* that he is not the author of the phone bills, has *no personal knowledge* as to how they are authored or maintained and is *not competent* to testify regarding them.  *see* Korman Declaration, Exhibit E, Plaintiff's Response to Interrogatories Nos.1, 2, and 5.  Further, as plaintiff is not a Verizon employee, he is certainly not qualified to lay a foundation for the records, especially where, despite his now sworn testimony as to the amount of calls he allegedly received in this case, at a time when his memory was clearer and he had not been coached by his attorneys, plaintiff had no idea how many times defendant had allegedly contacted him or when (*see* CSOF ¶ 22).  Also, despite his claims in paragraph 3 of the affidavit, plaintiff is not at all certain about what calls he received to where and from whom (*Id.*) and his now inconsistent testimony is not credible.  Therefore, defendant's unsubstantiated and self-serving claims that the telephone number at issue is a cellular phone are not enough to satisfy his burden 1) without authentic non-hearsay evidence from Verizon and 2) in light of the various conflicting public records searches which indicate that the telephone number at issue is a landline (*see* CSOF ¶ 13).

## **CONCLUSION**

Based on the foregoing arguments, this Court should deny Plaintiff's partial motion for summary judgment pursuant to Fed. R. Civ. 56(a).

Dated: April 16, 2012               Respectfully submitted,

    /s/ Hilary Korman
Mel S. Harris & Associates, LLC
By: Hilary F. Korman, Esq.
5 Hanover Square, 8th Fl.
New York, NY. 10004
Direct Dial: (212) 571-4900 Ext. 3309
Direct Facsimile: (212) 660-1018
E-mail: hkorman@melharrislaw.com